# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 17-21225-Civ-SCOLA/TORRES

DOREEN O'MALLEY,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

## ORDER ON DEFENDANT'S *DAUBERT* MOTION
## TO STRIKE PLAINTIFF'S EXPERT WITNESS EDWARD GRAS

This matter is before the Court on Royal Caribbean Cruises, Ltd.'s ("Defendant") *Daubert* motion to strike and preclude the testimony of Doreen O'Malley's ("Plaintiff") expert witness Edward Gras ("Mr. Gras"). [D.E. 44]. On May 31, 2018, Plaintiff timely filed her response [D.E. 48] and Defendant replied on June 7, 2018. [D.E. 50]. Therefore, Defendant's motion is now ripe for disposition. Having reviewed the motion, response, reply, and relevant authority, and for the reasons discussed below, Defendant's motion is **GRANTED**.

### *I.*    *BACKGROUND*

This case is a personal injury action in which the Plaintiff seeks to recover for physical injuries sustained as a result of an accident onboard Defendant's vessel, Anthem of the Seas. Plaintiff has asserted a single count of negligence against Defendant based on a theory that Defendant allowed ping pong balls to collect on a

1

roller skating rink where Plaintiff was roller skating, which resulted in her falling and breaking her ankle. Plaintiff alleges that there was no netting to prevent foreign objects from falling on the skating rink surface or a warning sign to alert for ping pong balls falling on the skating surface. Plaintiff also claims that the ship's crew members did not remedy the dangerous condition. Therefore, Plaintiff demands judgment against Defendant for compensatory damages.

## II. APPLICABLE PRINCIPLES AND LAW

The decision to admit or exclude expert testimony is within the trial court's discretion and the court enjoys "considerable leeway" when determining the admissibility of this testimony. *See Cook v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1103 (11th Cir. 2005). As explained in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the admissibility of expert testimony is governed by Fed. R. Evid. 702.[1] The party offering the expert testimony carries the burden of laying the proper foundation for its admission, and admissibility must be shown by a preponderance of the evidence. *See Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th

---

[1] Rule 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

2

Cir. 2004) ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or the defendant in a civil suit, or the government or the accused in a criminal case.").

"Under Rule 702 and *Daubert*, district courts must act as 'gate keepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). The purpose of this role is "to ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Also, in its role as "gatekeeper," its duty is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)

To facilitate this process, district courts engage in a three part inquiry to determine the admissibility of expert testimony:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert;* and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*City of Tuscaloosa*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted). The Eleventh Circuit refers to the aforementioned requirements as the "qualification," "reliability," and "helpfulness" prongs and while they "remain distinct concepts"; "the courts must take care not to conflate them." *Frazier*, 387 F.3d at 1260 (citing *Quiet Tech*, 326 F.3d at 1341).

3

Furthermore, in determining the *reliability* of a scientific expert opinion, the Eleventh Circuit considers the following factors to the extent possible:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. Notably, however, these factors do not exhaust the universe of considerations that may bear on the reliability of a given expert opinion, and a federal court should consider any additional factors that may advance its Rule 702 analysis.

*Quiet Tech*, 326 F.3d at 1341 (citations omitted). The aforementioned factors are not "a definitive checklist or test," *Daubert*, 509 U.S. at 593, but are "applied in case-specific evidentiary circumstances," *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005). While this inquiry is flexible, the Court must focus "solely on principles and methodology, not on conclusions that they generate." *Daubert*, 509 U.S. at 594-95. It is also important to note that a "district court's gatekeeper role under *Daubert* 'is not intended to supplant the adversary system or the role of the jury.'" *Quiet Tech*, 326 F.3d at 1341 (quoting *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001)). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking but admissible evidence." *Daubert*, 509 U.S. at 580; *see also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) ("As gatekeeper for the expert evidence presented to the jury, the judge 'must do a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology

4

properly can be applied to the facts in issue.'") (quoting *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010)).

## *III.    ANALYSIS*

Defendant's motion seeks to exclude the opinions and testimony of Plaintiff's liability expert, Mr. Gras, because he is unqualified to testify in this case and his methodology – or lack thereof – is not sufficiently reliable. According to Defendant, Mr. Gras proffers the following opinions in his report:

> 1. Passengers aboard an oceangoing vessel are afforded a heightened duty of care in protecting them from physical harm.
> 2. A ping pong ball on the rink created a hazard for skaters.
> 3. The crew on board did not take any action to remove the ping pong ball.
> 4. Plaintiff suffered injury when she fell while attempting to remove a ping pong ball which is reflected in a video of the incident.
> 5. Netting was available and should have been lowered to prevent a ping pong ball from being on the skating rink.

[D.E. 44].

Defendant contends that Mr. Gras' opinions are unhelpful to the trier of fact because they fail to go beyond the knowledge of the average layperson and contain conclusory statements that mirror an attorney's arguments. Defendant also claims that Mr. Gras has never reviewed any of the discovery responses in this case nor has he inspected the location of the incident, any of the equipment involved, or the ping pong balls and nets. Therefore, Defendant suggests that Mr. Gras' opinions are inadmissible because (1) they will not assist the trier of fact, (2) they are unreliable and unsupported by any methodology, and (3) there is no evidence that Mr. Gras is qualified to testify that the ping pong balls caused Plaintiff to trip and fall.

5

Accordingly, Defendant seeks to strike Mr. Gras as an expert witness because he fails to satisfy any of the requirements under Fed. R. Evid. 702, 703, and *Daubert*.

### A. *Helpfulness*

Defendant's first argument is that Mr. Gras will not assist the trier of fact because his report is devoid of any independent analysis and merely restates Plaintiff's arguments. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63 (citations omitted). Furthermore, while "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *United States v. Delatorre,* 308 Fed. Appx. 380, 383 (11th Cir. 2009)). The Eleventh Circuit has also made clear that "merely telling the jury what result to reach is unhelpful and inappropriate." *Umana-Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990)).

Here, Defendant contends that Mr. Gras' opinions are no different than an attorney's closing arguments because they merely opine on whether Defendant breached its duty of care. Defendant takes issue with these opinions because Mr. Gras is purportedly attempting to usurp the role of a jury and go far beyond the realm of an admissible expert opinion. For example, Defendant claims that Mr. Gras offers nothing more than legal conclusions when opining that Defendant's crew

6

was negligent. Making matters worse, Defendant suggests that the legal conclusions in the report are incorrect as a matter of law. *See, e.g.*, [D.E. 44-1] (opining that "Passengers aboard an oceangoing vessel were afforded a heightened duty of care"). Because Mr. Gras' opinions contain mere legal conclusions (that are incorrect) and restatements of Plaintiff's arguments, Defendant concludes Mr. Gras must be stricken as an expert in this case.

Defendant's argument is well taken. After an independent review of Mr. Gras' expert report, he states in a two page document that he has reviewed the video footage of the underlying incident and concluded that Defendant was negligent. But, Mr. Gras' opinions are replete with impermissible legal conclusions. For example, Mr. Gras asserts in the final paragraph of his expert report (1) that the "harm was created by the negligence of the vessel's crew," and (2) that Plaintiff's "injuries were caused by the negligence of [the] ship personnel . . . ." [D.E. 44-1]. Mr. Gras continues this trend with statements that "the failure of the vessel to have implemented a policy that would have prevented foreign objects from falling onto the skating surface" caused Plaintiff's injuries. *Id.*

The Eleventh Circuit has made clear that legal conclusions or statements instructing what conclusion the jury should reach are impermissible and do not pass muster under *Daubert*. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d 1092, 1112 n.8 (11th Cir. 2005) ("[C]ourts must remain vigilant against the admission of legal conclusions") (citations & quotations omitted); *see also Montgomery*, 898 F.2d 1541 (11th Cir. 1990) ("An expert may not . . . merely tell the

7

jury what result to reach."). "A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery*, 898 F.2d 1541 (citing *United States v. Poschwatta,* 829 F.2d 1477, 1483 (9th Cir. 1987); *United States v. Baskes,* 649 F.2d 471, 479 (7th Cir. 1980)).

Here, Mr. Gras' expert report suffers from the same deficiencies as in *Higgs v. Costa Crociere S.p.A. Co.*, 2016 WL 4370012 (S.D. Fla. Jan. 12, 2016). In *Higgs*, Judge Cohn found that an expert report contained impermissible legal conclusions because it included statements that the defendant was "at fault" and that the crew "was careless." As a result, Judge Cohn struck all of those statements because they ran afoul of Eleventh Circuit precedent and *Daubert*.

The same reasoning applies in this case because Mr. Gras' generic opinions are intertwined with legal conclusions that Defendant was negligent and that the vessel's personnel caused Plaintiff's injuries. Therefore, we conclude that Mr. Gras may not testify that Defendant was at fault or that Defendant breached its duty of care. And the statements in Mr. Gras' expert report must also be stricken because they are ultimately legal conclusions. To this extent, Defendant's motion is **GRANTED**.

### B.  *Qualifications*

Next, Defendant argues that there is no evidence that Mr. Gras is qualified to give any expert testimony or opinion in this case. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 154 (1997) (stating that Rule 702 requires that the expert be qualified and that his testimony assist the trier of fact). An expert may be qualified to testify in

8

multiple ways: "'by knowledge, skill, experience, training, or education'" and "not necessarily unqualified simply because her experience does not precisely match the matter at hand." *Furmanite Am., Inc.*, 506 F. Supp. 2d at 1129 (citing *Maiz,* 253 F.3d at 665, 669). "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Investments, Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc.,* 239 F. Supp. 2d 1308, 1314–16 (N.D. Ga. 2002)). "In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *City of Tuscaloosa,* 158 F.3d at 562–63).

Determining an expert's qualifications is not a stringent inquiry "and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations omitted); *see also Johnson v. Big Lots Stores, Inc.,* 2008 WL 1930681, *14 (E.D .La. Apr. 29, 2008) (summarizing *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 507 n.10 (5th Cir. 1999), and "explaining that after an individual satisfies the relatively low threshold for qualification, the depth of one's qualification may be the subject of vigorous cross-examination"); *see also Martinez v. Altec Indus., Inc.,* 2005 WL 1862677, *3 (M.D. Fla. Aug. 3, 2005) (quoting *Rushing,* 185 F.3d at 507 ("As long as some reasonable indication of qualifications is adduced . . . qualifications become an

9

issue for the trier of fact rather than for the court in its gate-keeping capacity")). After a review of the relevant issues and an expert's qualifications, "the determination regarding qualification to testify rests within the district court's discretion." *Clena Investments, Inc.*, 280 F.R.D. at 661 (citing *Berdeaux v. Gamble Alden Life Ins. Co.,* 528 F.2d 987, 990 (5th Cir. 1976) (footnote omitted)).

Defendant claims that there is no support that Mr. Gras has any knowledge, skill, experience, training, or education on whether the ping pong balls in this case were a danger to skaters. For instance, Defendant explains that Plaintiff never disclosed Mr. Gras' curriculum vitae and that his only relevant experience is found in two short sentences of his expert report. *See* [D.E. 44] ("Having served as Chief Officer aboard the passenger ships SANTA CECELIA, SANTA BARBARA and SANTA MONICA I have familiarity with the obligations of vessels carrying U.S. citizens to and from American ports of departure and foreign ports"); *Id* ("[B]ased on my many years of experience I am familiar with the standard of care in the industry regarding passenger safety as that responsibility, in my experience, falls under the auspices of the vessel's safety officer."). Defendant also argues that there is no evidence as to when or how long Mr. Gras worked as a Chief Officer on passenger ships or how this position relates to him being an expert on whether ping pong balls cause roller skaters to fall. Because Plaintiff's disclosure [D.E. 34] and Mr. Gras' expert report fail to indicate Mr. Gras' level of expertise, Defendant concludes that he should be precluded from offering expert opinions in this case.

The Court's inquiry under Rule 702 with respect to qualifications concerns

whether Mr. Gras is qualified to testify competently regarding the matters he intends to address. After an independent review of Mr. Gras' report and Plaintiff's expert disclosures, we agree that there is no record evidence that Mr. Gras is qualified to render an expert opinion in this case. The only evidence that we have of Mr. Gras' qualifications is that he previously served as a Chief Officer on unidentified passenger ships. But, there remains no evidence of (1) Mr. Gras' employers in the marine industry, (2) his job duties, (3) his length of employment in the marine industry, (4) his level of training and education, or (5) the connection between his qualifications and the facts of this case. For instance, did he ever work on a vessel with similar facilities or did he ever witness the type of facilities at issue? We do not know.

As the record stands now, there is no information that might suggest that Mr. Gras is qualified to render an expert opinion in this case. *See United States v. Ta*, 2007 WL 2324616, at *3 (N.D. Ga. Aug. 9, 2007) ("Defendant does not articulate, nor is the Court able to discern, how the general study of American literature or 'post-war issues of culture, society and politics in Vietnam' qualifies Chung to testify competently regarding how Defendant's intent to commit the crime may have been affected by his Vietnamese culture."). Therefore, based on our examination of Mr. Gras' credentials – or lack thereof – in connection with the subject matter of the proposed testimony, Defendant's motion is **GRANTED** because there is no record evidence that Mr. Gras is qualified to testify as an expert with respect to the question of causation between ping pong balls and Plaintiff's fall.

## C. *Reliability*

Defendant's final argument is that Mr. Gras' opinions and testimony are inadmissible because they are unsupported by any reliable methodology and fail to rely on a single study, article, or authority as support. "The reliability standard is established by Rule 702's requirement that an expert's testimony pertain to 'scientific . . . knowledge,' since the adjective 'scientific' implies a grounding in science's methods and procedures, while the word 'knowledge' connotes a body of known facts or of ideas inferred from such facts or accepted as true on good grounds." *Daubert*, 509 U.S. at 580. This entails an assessment of whether the "methodology underlying the testimony is scientifically valid." *Id*. at 592. The four non-exhaustive factors used to evaluate the reliability of a scientific expert opinion include:

> (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community.

*Frazier*, 387 F.3d at 1262 (citations omitted).

Defendant argues that Mr. Gras' experience fails to provide "sufficient foundation rendering reliable *any* conceivable opinion the expert may express" because Mr. Gras reviewed no discovery responses, examined none of the objects involved in this case, and simply parroted Plaintiff's allegations. *Frazier*, 387 F.3d at 1262 (emphasis in original). As support, Defendant relies on Judge Williams' decision in *Umana-Fowler v. NCL (Bahamas) Ltd.*, where the Court noted that the

12

expert failed to (1) conduct a site inspection, (2) take photographs, (3) collect data, (4) review written discovery, and (5) interview witnesses. *See* 49 F. Supp. 3d at 1123. As such, the Court found that the expert did "not elaborate as to how [his] analysis was conducted, hos his experience informed that analysis, and what steps he took to verify the results of his analysis." *Id*. (citations omitted). Because Mr. Gras' expert report suffers from the same deficiencies, Defendant concludes that it must be stricken for failing to meet the requirements under *Daubert*.

Defendant's argument is persuasive because Mr. Gras' methodology suffers from a plethora of deficiencies.² One case that illustrates these defects is *Farley v. Oceania Cruises, Inc.*, 2015 WL 1131015, at *1 (S.D. Fla. Mar. 12, 2015). In *Farley*, Judge O'Sullivan struck an expert witness where he sought to provide maritime liability and safety opinions regarding "safety issues and the applicable standards of care and policies and procedures in the cruise ship industry for maintaining clear passageways for the safety of passengers and crew members and to opine regarding the cause of [the p]laintiff's fall . . . ." *Id*. The expert opined that the cruise line was "careless and negligent" and that the cruise line was "at fault" for the passenger's injury. *Id*. The Court found that the methodology failed for several reasons because (1) the expert "failed to inspect the vessel where the accident took place or interview any crew members," (2) "[h]e d[id] not cite to any publications or experiments to support his opinions with respect to lounge chair safety," and (3)

---

² Plaintiff's response undermines her own argument because it notes that Mr. Gras was aware of deposition testimony but noticeably sidesteps a statement that Mr. Gras reviewed those transcripts before drafting his expert report.

"d[id] not provide a detailed explanation of how his experience supports his opinions or what materials he consulted (other than the policies and procedures of competitor cruise line operators) to reach his conclusions." *Id*. at *8.

Here, Mr. Gras' expert report suffers from many – if not all – of the same deficiencies identified in *Farley*. His expert report simply lists a number of conclusory statements without any foundation. He does not demonstrate whether he performed any analysis nor does he indicate whether his opinions were subject to any verification or peer review, or how his experience specifically informed his opinions. Neither his report nor his testimony references a single study, article, or authority to support his opinions. It appears that Mr. Gras only reviewed video footage and either read deposition testimony or was told about it before producing his expert report.

The advisory committee notes for Rule 702 illustrate how expert reports – such as Mr. Gras' – fail to satisfy the reliability prong of *Daubert*:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'

*Sorrels v. NCL (Bahamas) Ltd.,* 2013 WL 6271522, at *6 (S.D. Fla. Dec.4, 2013) (quoting Fed. R. Evid. 702 advisory committee notes (2000 amends.) (emphasis added)). Nothing in Mr. Gras' opinions are "tethered to any supporting materials or sources" as there are no studies, peer-reviewed materials, treatises, sources, data nor

14

anything else underlying his views. *Farley*, 2015 WL 1131015, at *7. Instead, his opinions are conclusory statements regarding Defendant's fault that are not tied to any methodology. Mr. Gras also does not provide a sufficient basis for his opinions, especially in light of the fact that they are legal conclusions. For these reasons, Mr. Gras' expert report does not satisfy *Daubert* and therefore Defendant's motion to strike and preclude is **GRANTED** on this basis as well.

## *IV. CONCLUSION*

For the reasons stated above, it is hereby **ORDERED AND ADJUDGED** that Defendant's *Daubert* motion to strike and preclude Plaintiff's expert witness is **GRANTED**. [D.E. 44].

**DONE AND ORDERED** in Chambers at Miami, Florida this 13th day of June, 2018.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge